# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

BOULEVARD AND CO, LLC,

                    Plaintiff,

v.

ARRES, INC., BEN EGAN,
GEOFFREY SAMUELS,
SOUTHSTAR FINANCIAL,
LLC, BERNARD LINNEY,
and SUSAN LINNEY

                    Defendants.

Case No. 17-13346
Hon. Terrence G. Berg

## OPINION AND ORDER TRANSFERRING CASE TO DISTRICT OF SOUTH CAROLINA PURSUANT TO 28 U.S.C. § 1406(a)

### I.    Introduction

This case arises out of a contract dispute between Boulevard and Co, LLC, ("Plaintiff" or "Boulevard"), an investment-banking and private-investment firm based in Michigan, and Defendant Arres, Inc. ("Arres"), a South Carolina corporation. Plaintiff alleges that Arres breached its contract with Plaintiff by failing to pay transaction and engagement fees allegedly owed for services Plaintiff performed on Arres' behalf. Plaintiff further alleges that Defendants SouthStar Financial, LLC ("SouthStar"), Geoffrey Samuels, and

Bernard and Susan Linney (together, "the SouthStar Defendants") tortiously interfered with Plaintiff's contract with Arres, and that of the Defendants conspired to cause Arres to breach its contract with Plaintiff. Defendants have moved to dismiss Plaintiff's case for lack of personal jurisdiction.

For the reasons explained below, the Court finds that Plaintiff has failed to make a *prima facie* showing that this Court may exercise personal jurisdiction over the Defendants in this action. The Court also finds that venue in this district is improper. Consequently, in the interest of justice, the Court will **TRANSFER** this case to the District of South Carolina and, will **DENY** Defendants' motions to dismiss as moot.

## II.    Background

Plaintiff Boulevard is an investment-banking firm with its principal place of business in Royal Oak, Michigan. Dkt. 5, Pg. ID 37. Defendant Arres is a solar power installation company incorporated in South Carolina with its principal place of business in South Carolina. Dkt. 5, Pg. ID 37.  Defendant Ben Egan is the CEO of Arres and resides in South Carolina. Dkt. 14-1, Pg. ID 89.  Plaintiff alleges that it entered into a contractual agreement (the "Agreement") with Defendant Arres on July 19, 2017, providing that it would "prepare descriptive information, identify potential parties to a financing transaction, such as financing sources like Defendant

SouthStar, initiate contact with financing sources, conduct financial analysis, circulate information, negotiate and structure the proposed transaction, evaluate transaction alternatives, and coordinate due diligence on behalf of Arres." Dkt. 5, Pg. ID 39. Defendant SouthStar Financial, LLC ("SouthStar") is a company that provides financing and is located in South Carolina. Defendants Bernard Linney, Susan Linney ("the Linneys"), and Geoffrey Samuels ("Samuels") are respectively SouthStar's President, Chief Executive Officer, and Assistant Vice President.

Plaintiff Boulevard alleges that Arres agreed to pay it an Engagement Fee and other out-of-pocket expenses associated with its work under the Agreement. *Id.* Moreover, Plaintiff alleges that Arres was obligated to pay it a "Transaction Fee" if Arres closed on a financing transaction in connection with the services Plaintiff provided under the Agreement. *See id.* at 38–39. According to Plaintiff, "the Services under the Agreement were provided from Plaintiff's Royal Oak, Michigan office." Dkt. 5, Pg. ID 39. According to Defendant, Plaintiff's representatives travelled to South Carolina to execute the Agreement and all other communications relating to the agreement were emailed, telephoned, and sent via text between the parties. Dkt. 14-1, Pg. ID 89. Arres insists that its business involves installing solar power systems in South Carolina and that it has never conducted business in Michigan. Dkt. 14-1, Pg. ID 89.

Plaintiff alleges that after executing the Agreement with Arres, it initiated contact with SouthStar Financial, LLC ("SouthStar") as a potential source of financing for Arres. Dkt. 5, Pg. ID 40. South-Star is a limited liability company formed under the laws of South Carolina with its principle place of business in South Carolina. Dkt. 5, Pg. ID 37. Plaintiff maintains that it "conducted [a] financial analysis" and coordinated with Arres to provide financial information to SouthStar. *Id.* Plaintiff then informed SouthStar, Samuels, and the Linneys "of the Agreement" between Plaintiff and Arres and "directed SouthStar, Samuels, and the Linneys that all communications with the ownership and management team of Arres needed to be directed through Boulevard." Dkt. 5, Pg. ID 40. Plaintiff alleges that it negotiated and structured a financing transaction with SouthStar, which resulted in the issuance of a "Term Sheet" by SouthStar on September 15, 2017. *See id.* According to Plaintiff, this Term Sheet was accepted by Arres and signed by Egan. *See id.*

Despite Plaintiff's alleged prohibition on direct communications between SouthStar and Arres, Plaintiff claims SouthStar directly communicated with Arres and Egan on multiple occasions. Dkt. 5, Pg. ID 41. Plaintiff alleges that on the morning of September 22, 2017, SouthStar—without notifying Plaintiff—reached out to Egan and demanded that he come to SouthStar's office to sign financing documents. *Id.* Plaintiff alleges that Egan notified it of this request

from SouthStar and that Plaintiff advised Egan not to sign anything that had not been reviewed. *Id.* However, Plaintiff learned the next day that Egan had gone to SouthStar's office and signed documents including, without limitation, a Non-Recourse Factoring Agreement and a Security Agreement. Dkt. 5, Pg. ID 42. Plaintiff alleges that the SouthStar Defendants in fact provided funding to Arres, but Arres subsequently failed to pay Plaintiff a Transaction Fee or any of Plaintiff's monthly "Engagement Fees and Expenses." Dkt. 5, Pg. ID 42.

Plaintiff alleges breach of contract against Defendant Arres and seeks indemnification from Arres for its reasonable out-of-pocket costs and expenses incurred in enforcing the Agreement. Dkt. 5, Pg. IDs 43–46. Plaintiff alleges tortious interference with contractual relations and/or business expectancies against Defendants SouthStar, Samuels, and the Linneys. Dkt. 5, Pg. ID 43–45. Against all of Defendants, Plaintiff alleges a civil conspiracy claim. Dkt. 5, Pg. ID 45–46.

## III.  Standards of Review

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(2), a district court may dismiss an action if it lacks personal jurisdiction over the litigants. Fed. R. Civ. P. 12(b)(2). A Plaintiff faced with a motion to dismiss pursuant to Rule 12(b)(2) bears the burden of establishing

the court's authority to proceed against the defendant(s). *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In the face of a properly supported motion for dismissal, a plaintiff may not stand on his pleadings, but must by affidavit or otherwise, set forth specific facts that show that the court has jurisdiction. *Id*. The court has the discretion, however, to decide the motion upon affidavits alone, or to conduct an evidentiary hearing to resolve any apparent factual questions. *Id*. Ultimately, to survive a motion to dismiss based on Rule 12(b)(2), a plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Id*.

## B. Personal Jurisdiction

Determining personal jurisdiction involves a two-step inquiry. First, the court must decide whether the exercise of personal jurisdiction is in accordance with the law of the state in which it sits. *See, e.g., Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). Second, the court must determine whether exercising personal jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id*. Michigan courts have consistently held that Michigan's long-arm statute extends as far as the Fourteenth Amendment's Due Process Clause allows. *Id*. Accordingly, Defendants' motions only require this Court to address the second element—whether its exercise of personal jurisdiction

over the Defendants comports with the Due Process Clause of the Fourteenth Amendment.

It is well-settled that due process requires that a non-resident defendant have "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit has applied three criteria to guide the minimum contacts analysis:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir. 1989) (citing *Southern Machine Company, Inc. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)).

Ultimately, satisfaction of the due process clause for purposes of limited personal jurisdiction requires the defendant's conduct and connection with the forum to be such that he should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Thus, the due process analysis focuses primarily on "the relationship among the defendant, the

forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

## IV.  Analysis

Personal jurisdiction over a defendant can be established in two primary ways. First, a court may exercise "general" jurisdiction, which requires a showing that the defendant had continuous and systematic contacts with the forum state; second, a court may exercise "limited" personal jurisdiction, which allows a court to exercise jurisdiction over a defendant only on claims that "arise out of or relate to" a defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Plaintiff does not seek to invoke the Court's ability to exercise general jurisdiction over the Defendants in this action. Therefore, the Court will only address whether it may exercise limited personal jurisdiction over the Defendants.

As previously stated, to satisfy the constitutional requirements of due process, the Court must determine whether the Defendants have sufficient "minimum contacts" with the state of Michigan. *Theunissen*, 935 F.2d at 1460. Three elements must be shown to demonstrate that a defendant has "minimum contacts" with the forum: 1) the defendant must "purposefully avail himself of the privilege of acting in the forum state;" 2) "the cause of action must arise

from the defendant's activities there;" and 3) "the acts of the defendant . . . must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine*, 401 F.2d at 381. A plaintiff asserting personal jurisdiction must only make a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal. *Neogen Corp.*, 282 F.3d at 887. Plaintiff could meet this burden by establishing with reasonable particularity sufficient contacts between Defendants and the forum state. *Id*.

## A. The Court's Exercise of Personal Jurisdiction Over the Defendants in this Action

Plaintiff must show that Defendants in this action purposefully availed themselves of the privilege of conducting business in Michigan, thus invoking the benefits and protections of Michigan law. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). Purposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state. *Neogen Corp.*, 282 F.3d at 889 (quoting *Burger King*, 471 U.S. at 475). Random, fortuitous or attenuated contacts with the forum state are not sufficient to satisfy the purposeful availment requirement for the exercise of limited personal jurisdiction. *Burger King,* 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.

Ct. 1473 (1983)). Rather, where the defendant deliberately engages in contacts with the forum state that create continuing obligations between himself and residents of the forum, he has manifestly availed himself to the privilege of conducting business there. *Id.*

### 1. Defendants Arres and Egan Did Not Purposefully Avail Themselves to the Privileges of Conducting Business in Michigan

Plaintiff argues that Defendants Arres and Egan purposefully availed themselves to the privileges of conducting business in Michigan by "negotiat[ing], communicat[ing] and correspond[ing] with and through Plaintiff—a Michigan entity conducting business within the State of Michigan—for the purpose of consummating a financing transaction [between] Arres and SouthStar under which Boulevard would be paid investment banking fees in Michigan." Dkt. 20, Pg. ID 182. Plaintiff continues, "[a]ll Defendants were well aware that Boulevard was providing investment banking services to Arres in and from Michigan and that Boulevard would be entitled to fees . . . due and payable to Boulevard within the State of Michigan." *Id.* On the whole, Plaintiff maintains that because Defendants decided to engage Boulevard for financial services, the Defendants purposefully availed themselves of the privilege of conducting business in Michigan. *See id.* at 183.

Plaintiff's argument is not well-taken. In *Kerry Steel, Inc. v. Paragon Indus.*, Plaintiff, a Michigan steel service company, approached the defendant with an offer to sell steel coils. 106 F.3d 147, 148 (6th Cir. 1997). After negotiating with plaintiff via telephone and facsimile, the defendant accepted plaintiff's offer by telephone. *Id.* The defendant did not have any employees or offices in Michigan, and none of defendant's employees had ever been in Michigan for the purpose of conducting business there. *Id.* at 151. After taking possession of the steel coils at a warehouse in Illinois, the defendant refused to pay the full purchase price because of alleged quality issues. *See id.* The plaintiff brought suit in a Michigan court for breach of contract. Defendant then removed the case to federal court on diversity grounds and moved to dismiss for lack of personal jurisdiction. *Id.* Defendant argued that it had not purposefully availed itself of the benefits and protections of Michigan law. *See id.* In finding insufficient minimum contacts with Michigan, the court pointed out that the mere fact that defendant entered into a contract with a Michigan corporation was not sufficient to show that the defendant purposefully availed itself of Michigan law. *Id.* at 151; *see also CompuServe, Inc., v. Patterson,* 89 F.3d 1257, 1265 (6th Cir. 1996) (non-resident's entering in to contract with entity in forum state does not, without more, establish minimum contacts with the forum state).

The *Kerry Steel* plaintiff, much like the Plaintiff here, tried to show defendant's purported "purposeful availment" by pointing to defendant's telephone calls and faxes to the plaintiff in Michigan. *Kerry Steel,* 106 F.3d at 151. Citing Sixth Circuit precedent, the court referred to these communications as "immaterial," explaining they were the very type of random, fortuitous, and attenuated contacts the *Burger King* court rejected as failing to justify haling a non-resident defendant into a foreign jurisdiction. *Id.* (citing *LAK,* 885 F.2d at 1301). Ultimately, the court found that the parties' communications via telephone and fax were secondary factors insufficient to establish sufficient minimum contacts to satisfy due process. *Id*. The *Kerry Steel* court gave weight to the fact that it was the *plaintiff* who reached out to, and initiated contact with, the defendant—not the other way around. *Id.*

Plaintiff does not deny it sent representatives to South Carolina in order to negotiate the contract or that the contract was executed in that state, not Michigan. *See* Dkt. 14-1, Pg. ID 97. Rather, Plaintiff attempts to show Defendants Arres and Egan purposefully availed themselves of the benefit of Michigan laws because Arres entered into a contract with Plaintiff, a Michigan resident. Dkt. 20, Pg. ID 182. As in *Kerry Steel* Plaintiff here relies on Defendants' participation in phone, email, and text communications, leading up

to the finalization of the contract, to show that Defendants purposefully availed themselves of the benefits and protections of Michigan law. *See* Dkt. 20, Pg. IDs 178–79. But, as explained above, the Sixth Circuit has found that entering into a contract with a Michigan corporation is not sufficient to show that a defendant purposefully availed itself of Michigan law. *Kerry Steel*, 106 F.3d at 151. Moreover, Defendant's use of interstate facilities to communicate with Plaintiff in Michigan cannot alone provide the minimum contacts required by due process. *See id.* (citing *LAK,* 885 F.2d at 1301); s*ee also International Technologies Consultants, Inc. v. Euroglas S.A.,* 107 F.3d 386, 395 (6th Cir. 1997) (finding that defendant's communications with a Michigan plaintiff by letter, telephone, and facsimile reflected communications that had "no talismanic qualities, and the only reason the communications in question here were directed to Michigan was that plaintiff found it convenient to be present there."). These facts show that Arres and Egan's activities were not specifically directed toward Michigan; nothing in the nature of Defendants' contacts suggests they intended to avail themselves of the laws of Michigan by dealing with Plaintiff—they simply responded to a business contact. Arres and Egan merely contracted with a company that happened to be situated in Michigan, they did not engage in contacts directed at the forum State of Michigan.

Plaintiff does not deny that it reached out and initiated contact with Defendants Arres and Egan in order to market its financial services. This is uncontroverted. Dkt. 14 Ex. 1, Pg. ID 116. In Defendant Egan's Affidavit, he avers that "Plaintiff initiated contact with Arres, Inc. in July 2017 regarding their financial services for commercial projects." *Id.* The Sixth Circuit has held that contacts with a forum state that are initiated by the Plaintiff are not meaningful contacts that would demonstrate purposeful availment. *See Air Prods. & Controls v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007). The record does not show that the Defendants "purposefully reached out" to "establish [their] own ties to [Michigan];" it rather supports a contrary finding that Plaintiff itself is the only link between the defendants and the forum. The exercise of personal jurisdiction over defendants in this scenario would not comport with due process. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122–23 (2014).

For the foregoing reasons, the Court finds that Defendants Arres and Egan did not "reach out" to Michigan, and the record lacks evidence to show Defendants intended to establish a "continuing relationship and obligations" in Michigan. *Burger King,* 471 U.S. at 473. The Court finds that Plaintiff has failed to make the requisite showing that Defendants Arres and Egan purposefully availed

themselves of the benefits and protection of Michigan's laws; therefore, the Court may not exercise personal jurisdiction over these Defendants.

### 2. The SouthStar Defendants Did Not Purposefully Avail Themselves of the Privilege of Conducting Business in Michigan

Plaintiff argues that the SouthStar Defendants transacted business in the State of Michigan "by negotiating with and through Boulevard from its Michigan office the financing Defendant SouthStar would provide to Defendant Arres." Dkt. 20, Pg. ID 178. However, the SouthStar Defendants' contacts with Michigan are even further attenuated than those of Arres and Egan. First, as it did with Arres and Egan, Plaintiff acknowledges that *it* initiated contact with SouthStar by reaching out to SouthStar in an attempt to secure financing for Defendant Arres. Dkt. 5, Pg. ID 40. As explained above, the Sixth Circuit has found that contacts initiated by a Plaintiff are not meaningful contacts that would demonstrate purposeful availment by the defendant. *See Air Prods. & Controls*, 503 F.3d at 552. Second, the record contains no allegation that the SouthStar Defendants established any contacts with the state of Michigan which were directed toward taking advantage of the benefits and protections of Michigan law. SouthStar—a South Carolina company operating in South Carolina—provided financing to Arres, also a South Carolina company operating in South Carolina. *See*

Dkt. 5, Pg. ID 41. Thus, Plaintiff's Amended Complaint lacks any indication that the SouthStar Defendants have engaged in "action[s] by the defendant[s] [themselves] that create a substantial connection with the forum state." *Neogen Corp.,* 282 F.3d at 889. Instead, Plaintiff points only to its own actions in seeking out SouthStar as a financing source for Arres. Dkt. 5, Pg. ID 40. Third, Defendant SouthStar's exchange of telephone calls, emails, written correspondence, and text messages with Plaintiff are not sufficient. Dkt. 20, Pg. ID 178. The Sixth Circuit has consistently held that these forms of communications are insufficient to satisfy the purposeful availment prong of the minimum contacts test. *See Kerry Steel*, 106 F.3d at 151*; see also LAK, Inc.*, 885 F.2d at 1300–01.

The record before the Court does not support any conclusion that the SouthStar Defendants purposefully availed themselves of the law of the forum. They did not sell or transport any goods *into* Michigan, perform any services *in* Michigan, or do anything *in* Michigan except, at most, respond to an inquiry from a Michigan resident about providing potential financing for another South Carolina company. For these reasons, the Court finds that Plaintiff has failed to show that the SouthStar Defendants purposefully availed themselves to the benefits and privileges of acting in Michigan. Thus, the Court cannot exercise personal jurisdiction over the SouthStar Defendants in this action.

### 3. The Remaining Factors in the Minimum Contacts Test

In light of the Court's conclusion that Plaintiff has not shown that Defendants have purposefully availed themselves of Michigan law or acting in Michigan, the Court need not address whether Plaintiff has otherwise satisfied the remaining prongs of the minimum contacts test—the Court cannot exercise limited personal jurisdiction over non-resident defendants that have not purposefully availed themselves of the benefits of the forum state's laws. The Court will nevertheless briefly address the remaining two factors, for they also counsel against the exercise of personal jurisdiction in this case.

The second factor in the minimum contacts analysis requires Plaintiff to show that its causes of action arise out of Defendants' activities in Michigan. *See Mohasco Indus., Inc.*, 401 F.2d at 381. An action is deemed to have "arisen from" a defendant's contacts with the forum state when those contacts are related to the operative facts of the controversy. *CompuServe*, 89 F.3d at 1267.

Plaintiff alleges breach of contract, civil conspiracy, and indemnification causes of action against Defendant Arres, and a civil conspiracy cause of action against Defendant Egan. Dkt. 5, Pg. IDs 43, 45–46. The essence of Plaintiff's causes of action against Arres and Egan is that "[t]he failure by Arres (as aided by the other Defendants) to pay the investment banking fees to Boulevard occurred in

Michigan. Thus, the cause of action arose from Defendants actions within the State of Michigan." Dkt. 20, Pg. ID 183. With respect to the SouthStar Defendants, Plaintiff alleges tortious interference with contractual relations and/or business expectancies and civil conspiracy causes of action. Dkt. 5, Pg. IDs 43-45. Plaintiff alleges that SouthStar conspired with and assisted Arres in its failure to pay Boulevard the investment banking fees at issue in this lawsuit. *See* Dkt. 20, Pg. ID 180.

All of Plaintiff's claims against the Defendants arise out of Arres' alleged failure to pay Plaintiff certain fees and expenses, and not from any affirmative acts undertaken by the Defendants in Michigan. The Court notes that Plaintiff does not allege that the Defendants ever set foot in Michigan in connection with this matter, and Plaintiff alleges no facts (nor does the record otherwise disclose any) to suggest the "operative facts of the controversy"—Arres' failure to pay and the alleged conspiratorial acts—occurred in Michigan. *See CompuServe*, 89 F.3d at 1267. Plaintiff's claims arise out of Arres' failure to pay Plaintiff certain transaction fees and other fees and expenses, but no evidence suggests Arres' conduct in refusing to pay took place anywhere but in South Carolina. *See Kerry Steel,* 106 F.3d at 152.

Moreover, Michigan courts and courts in this district have routinely rejected the argument that a non-resident's conduct outside

the forum state that causes *consequences* to a plaintiff in the forum state should subject the non-resident to personal jurisdiction in the forum where the consequences have allegedly been suffered. *See Theunissen*, 935 F.2d at 1460 (collecting cases). Rather, where a plaintiff suffers consequences as a result of extra-territorial conduct by a defendant, the resulting cause of action should generally be adjudicated where the actions took place that caused the harm. *See id*. This is especially true where the non-resident's contacts with the forum state are not sufficient to establish personal jurisdiction over it. *See id*. But this Court has already found that the Defendants did not engage in sufficient minimum contacts with Michigan to satisfy the purposeful availment requirement for the Court to exercise personal jurisdiction over them. Therefore, Plaintiff's allegation that its suffering of consequences in Michigan due to Defendants' extra-territorial activities is enough to demonstrate that its causes of action arise from Defendant's conduct in Michigan misses the mark. The fact that Plaintiff allegedly suffered consequences in the forum state due to Defendants' extra-territorial conduct is insufficient to show Plaintiff's respective causes of action arise from Defendant's actions in the forum state when Defendants have not otherwise purposefully availed themselves to acting in the forum state. *See Theunissen,* 935 F.2d at 1460 (citing *Price v. Shessel*, 415 F. Supp. 306 (E.D. Mich. 1976); *Storie v. Beech Aircraft Corp.,* 417

F. Supp. 141 (E.D. Mich. 1976)). Consequently, for the reasons explained above, Plaintiff has failed to show that its causes of action arise out of Defendants' actions in the forum state.

The final factor requires Plaintiff to show that Defendants' acts have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Mohasco Indus., Inc.*, 401 F.2d at 381; *see also Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (highlighting that the substantial connection must be based upon contacts "proximately result[ting] from actions by the defendant *himself*") (emphasis in original). The reasonableness of exercising jurisdiction over an out-of-state Defendant is determined by balancing: 1) the burden on the defendant, 2) the interests of the forum state, 3) the plaintiff's interest in obtaining relief, giving due regard to the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Theunissen*, 935 F.2d at 1460. Each of these factors militates against finding that the Court's exercise of jurisdiction over the Defendants here would be reasonable.

First, the Defendants would be greatly burdened by having to litigate this dispute in this district. Defendant Arres is incorporated and has its principle place of business in South Carolina; Defendant Egan is a resident of South Carolina. Dkt. 5, Pg. ID 37. SouthStar is a South Carolina company, and both the Linneys and Samuels

are residents of South Carolina. *Id; see also* Dkt. 16-1, Pg. ID 130, Dkt. 16-3, Pg. ID 157. The burden on Defendants to travel from South Carolina to Michigan to litigate this dispute, when the only connection to Michigan is that Plaintiff happens to be here, is considerable. Defendants' burden is heightened by the fact that the majority of key witnesses and documents are likely located in South Carolina. Dkt. 16-1, Pg. ID 144. Moreover, the reasonableness of requiring Defendants to travel to Michigan to litigate this dispute is undermined by the fact that it was Plaintiff who sent a representative to South Carolina for the purpose of negotiating and executing the agreement, *see* Dkt. 14-1, Pg. ID 89, and Plaintiff who reached out from Michigan to SouthStar in South Carolina in attempting to obtain financing for Arres. Dkt. 5, Pg. ID 39.

Second, Plaintiff has not identified any unique interest that Michigan has in resolving this dispute. The Court recognizes that Plaintiff is resident of the State of Michigan, and that states have a general interest in protecting their residents' legal rights. *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003). However, the fact that Defendants did not engage in any activity within the geographical confines of the state of Michigan or otherwise intentionally avail themselves of the jurisdiction's laws minimizes whatever interest Michigan may have. *See Intera Corp. v. Henderson*, 428 F.3d 605, 610, 618 (6th Cir. 2005).

Finally, the third factor of the balancing test looks to the plaintiff's interest in obtaining relief, giving due regard to the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Theunissen*, 935 F.2d at 1460. Plaintiff certainly has an interest in obtaining relief for the claims contained in its Amended Complaint. However, all of the Defendants are residents of South Carolina, and South Carolina's interest in resolving this dispute must be considered as well. *See Intera Corp*, 428 F.3d at 619.

Thus, for the reasons explained above, the Court finds that Plaintiff has not shown that Defendants' acts have a substantial enough connection with Michigan to make the exercise of jurisdiction over the Defendants reasonable. *See Mohasco Indus., Inc.*, 401 F.2d at 381.

### C. Whether Transfer is Appropriate

In addition to arguing that the Court's exercise of personal jurisdiction over them violates the Due Process Clause of the Fourteenth Amendment, Defendants argue, in the alternative, that this matter should be transferred to South Carolina pursuant to 28 U.S.C. § 1404(a). *See* Dkt. 14-1, Pg. IDs 107–10; Dkt. 16-1, Pg. IDs 148–52. However, a transfer under Section 1404(a) may not be granted when a court lacks jurisdiction over a defendant. *Global Crossing Telecommunications, Inc. v. World Connection Group, Inc.*, 287

F.Supp.2d 760, 763–64 (6th Cir. 2003) (citing *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir. 1993)). Because the Court cannot exercise personal jurisdiction over Defendants in this action, it cannot transfer the case to South Carolina pursuant to Section 1404(a). *Id.*

But a transfer pursuant to 28 U.S.C. § 1406(a) does not require a district court to have personal jurisdiction over a defendant before transferring a case to another court. *Id.*; *see also Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962). The Sixth Circuit, in following the Supreme Court's holding in *Goldlawr*, has found that a district court may exercise its discretion to grant a change of venue under Section 1406(a) even where the court lacks personal jurisdiction over the defendants prior to the transfer. *Pittock,* 8 F.3d at 329; *see also Martin v. Stokes,* 623 F.2d 469, 471 (6th Cir. 1980) (explaining that Section 1406(a) "applies in general to those actions brought in an impermissible forum. Rather than dismiss the action when the issue is raised, a district court may, in its discretion, transfer the action to a permissible forum."); *Family Wireless #1 v. Automotive Technologies, Inc.*, 2015 WL 5142350, at *3 (E.D. Mich. Sept. 1, 2015) ("Where personal jurisdiction is lacking, a court may only transfer pursuant to Section 1406(a).").

Section 1406(a) allows for the transfer of a case "to any district or division in which it could have been brought" if such transfer is

in the interest of justice. 28 U.S.C. § 1406(a). As a result of Plaintiff's inability to establish a basis for personal jurisdiction over defendants, this Court finds that venue is improper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, and that 28 U.S.C. § 1406(a) is the appropriate statute under which a transfer of venue may be granted. Defendants' residency in South Carolina, among other facts, shows that this case "could have been brought" in South Carolina at its inception. *See* 28 U.S.C. §§ 1391(b), 1406(a). For the reasons expressed in this Order, the Court finds that efficiency, fairness, and the interest of justice would be advanced through the transfer of this action to the United States District Court for the District of South Carolina.

## V. Conclusion

For the foregoing reasons, and in the interest of justice, this matter is hereby **TRANSFERRED** to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1406(a). Defendants' motions to dismiss for lack of personal jurisdiction are **DENIED** as moot because the case will be transferred to a district where there is personal jurisdiction. Finally, Defendants' motions to transfer pursuant to 28 U.S.C. § 1404(a) are **DENIED**.

**IT IS SO ORDERED.**

Dated: August 27, 2018

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on August 27, 2018.

s/A. Chubb
Case Manager